[Civ. No. 5647.   Fourth Dist.   Mar. 26, 1958.]

GUY S. ATKINSON COMPANY (a Corporation) et al., Respondents, v. HIGHLAND PARK PUBLIC UTILITY DISTRICT et al., Appellants.

Baker, Palmer, Wall & Raymond for Appellants.

Mack, Bianco, King & Eyherabide for Respondents.

MUSSELL, J.—This is an action for declaratory relief and for an injunction.

Defendant Highland Park Public Utility District is a political subdivision of the State of California organized under the provisions of the Public Utility District Act (Pub. Util. Code, 7).

Plaintiffs were engaged in a joint venture in the county of Kern, which venture consisted of the development of a housing subdivision on a tract of land in what was known as Highland Manor and which tract was annexed to the defendant district prior to the time this action was filed.

On October 10, 1947, the defendant district passed a resolution providing for the purchase by the district of the complete water system, wells and pumps owned and then being operated by the Highland Manor Water Company, a corporation, in said Highland Manor. The purchase price of this system was $35,000, which sum was to be raised by a bond issue of the district and the funds required to pay off the indebtedness incurred by such bond issue were to be raised from the revenue derived from the operation of the water system in the territory proposed to be annexed, or by taxation of the property within the said territory. This resolution further provided that in the event that extensions of the water system now in the territory proposed to be annexed are necessary to serve the inhabitants thereof, the cost of such extensions shall be borne by the owners or subdividers of the property to which such water system is extended; that the Highland Park Public Utility District will reimburse such owners or subdividers the cost of such extensions to the said water system in the ratio that each connection bears to the total number of connections which may be required to serve the parcel of land within such extended area, such reimbursement being made at the time of such connections; that the rates, rentals and charges for the furnishing of water to the inhabitants of the territory proposed to be annexed shall be the same as the rates, rentals and charges for the furnishing of water within the balance of such district.

On October 15, 1947, the board of directors of the Highland Park Public Utility District passed another resolution approving the annexation of Highland Manor and made it a part of the Highland Park Public Utility District, subject to the conditions set forth in the said resolution of October 10, 1947.

Subsequent to the completion of the annexation proceedings

and the acquisition of the water system in Highland Manor by the defendants, the plaintiffs, under supervision of defendants, caused a system of water to be installed in their tract in the annexed territory, expending therefor the sum of $11,987.38, and the mains were connected by defendant district to its water system. Thereafter plaintiffs notified defendant district that they desired reimbursement from it for the cost of extending the water mains into their tract. The defendant district then adopted a resolution requiring a connection charge of $175 for each new house connected for water service in that tract and requiring that said payment be made at the same time application for water service was made.

Plaintiffs commenced the present action to enjoin the defendants from taking such legislative action by fixing a connection charge against the consumers and also for the purpose of collecting from the district the costs of the extensions to the system installed by plaintiffs. The parties stipulated at the trial that the only issue before the court was whether the connection charge which the defendants fixed through its board of directors was a reasonable one and the trial was held on that basis. The court found, *inter alia*, that plaintiffs connected 11 houses to defendant district's system for which connection the district made no charge; that on March 12 the defendant company shut off all the water to all the houses in said tract except the 11 houses occupied by buyers and refuses to furnish water to the remaining houses in said tract until a connection charge of $175 a house has been paid; that on March 7, 1956, the board of directors of the defendant district adopted a resolution which for the first time established a connection charge for any house in the district in the sum of $175, and that prior thereto there was never any connection charge for the connection of any house in the district to the water system of the defendant established by resolution in excess of the sum of $5.00; that the proposed connection charge of $175 per unit bears no relation to the actual costs of turning the water into the houses of the plaintiffs; that said charge was designed to recoup the rebate which the defendant district by Ordinance 12 is obliged to make to plaintiffs, and was designed by defendant district, and will in fact apply only to houses of plaintiffs in tract 1826; that said charge of $175 per house, if paid by plaintiff, will exact from him $11,375; that the proposed connection charge amounts to a tax or assessment for the purpose of raising funds for capital acquisition in the form of the distribution system on plaintiff's tract 1826; that

what is or is not a reasonable rate for such a connection charge is a matter which in the first instance is delegated to the board of directors of the defendant district to be fixed by said board consistent with the actual cost of said district of the labor and material actually expended and reasonably necessary to cause the water to flow from the water mains theretofore installed in the street into the house to be connected thereto, but excluding from such connection charge all costs of any kind whatsoever to the district for the bringing of the water to the point where it is to flow from the said mains and into the houses connected thereto.

The court concluded, *inter alia,* "That the connection charge of $175.00 established by the defendant, Highland Park Public Utility District, by resolution of its Board of Directors adopted March 7, 1956, is confiscatory, unreasonable, unlawful and void, and said defendant district, its officers, servants, agents and employees, should be enjoined and restrained from collecting or attempting to collect the same."

Judgment was entered as follows:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the connection charge of $175.00 established by the defendant, Highland Park Public Utility District, by resolution of its Board of Directors adopted March 7, 1956, is confiscatory, unreasonable, unlawful and void, and said defendant district, its officers, servants, agents and employees, should be and are enjoined and restrained from collecting or attempting to collect the same.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Highland Park Public Utility District, and its Board of Directors, should be enjoined and directed, on or before December 1, 1956, to rescind and cancel said resolution of March 7, 1956.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Highland Park Public Utility District and its Board of Directors should be and are hereby enjoined and directed on or before December 1, 1956, to adopt a connection charge consistent with the actual cost to said defendant district of the labor and materials actually expended and reasonably necessary to cause the water to flow from the water mains theretofore installed in the street, into the house to be connected thereto, but excluding from such connection charge all costs of any kind whatsoever to the district for the bringing of the water to the point where it is to flow from the said mains and into the houses connected thereto."

The principal question to be here determined is whether the trial court's determination that the connection charge of $175 is confiscatory, unreasonable, unlawful and void is supported by the record.

In *Durant* v. *City of Beverly Hills*, 39 Cal.App.2d 133, 139 [102 P.2d 759], the city council had fixed the rates to be charged for water service and one outside the city sought to secure service at the same rate charged for service within the city. The court said:

"But, in the absence of any showing of any character that the charges were unreasonable, unfair or fraudulently or arbitrarily established, the trial court had no case for any relief to respondent. In short, the respondent has sought to substitute the court for the city council and have the court fix the charges which he should pay. The universal rule is that in these circumstances, the court is not a rate-fixing body, that the matter of fixing water rates is not judicial, but is legislative in character, and that the limit of its function and jurisdiction is to find, upon a proper showing, that the rates fixed are unreasonable and unfair. (Citations.) If upon such finding it is adjudged that the established rates shall not be collected, the court is not permitted to fix another and different rate, but this function must be left with the proper rate-fixing body."

In *Nourse* v. *City of Los Angeles*, 25 Cal.App. 384 [143 P. 801], the court held that the city of Los Angeles under its charter had assumed the duty of operating a water system for the purpose of supplying water to its inhabitants; that in the performance of this duty it acts, not in its sovereign capacity, but in the capacity of a private corporation engaged in like business; that like a private corporation, it is the duty of the city to furnish without discrimination to all its inhabitants who apply therefor a supply of water upon such applicants complying with such reasonable rules and regulations as it may lawfully establish for the conduct of the business. In that case appellant Nourse refused to pay a water charge due for water supplied to a former occupant of the premises involved and the city sought to exact payment of this charge by refusing to supply water to Nourse until he had paid the charge. The court there said (page 387) : "Our conclusion is that the regulation in question is unreasonable in that, without statutory authority therefor, it makes one person liable for the debts of another and contravenes the duty assumed by the city

to serve all its inhabitants without discrimination. This view is sustained by overwhelming authority. (Citations.)''

█ Appellants state in their reply brief that the fixing of rates and charges by the board of directors of a public utility district is a legislative function which has been delegated to it by the Legislature and will not be interfered with by the courts in the absence of a positive showing that the rates fixed are unreasonable or unfair. They contend that the connection charge of $175 for each connection made was reasonable and fair under the circumstances. However, we are of the opinion that there is substantial evidence to the contrary and that the trial court's finding in this connection is supported by the record.

Mr. Anderson, who was a member of the board of directors of the defendant district, testified that the connection charge of $175 was a method of getting money to pay for the line in front of each place and that it was not a charge for making the connection. The record shows that the plaintiffs claim they are entitled to a refund of $184.42 per house, as provided in their contract with the defendant district and defendants refused to pay this amount unless plaintiffs pay a connection charge of $175 per house.

Mr. Hobson, a certified public accountant, testified that the connection charge was against the consumer and not against the owner of the property "unless the owner happened to be a tenant to the consumer."

Mr. Leimbach, secretary and director of the defendant district, testified that since the inception of the district, the district made a connection charge of $5.00 where the lines and mains were in; that this was a flat nominal fee which they had had for years. The record supports the inference that the connection fee charge in effect represented an assessment in the form of a tax against a limited number of the properties in the district; that plaintiffs' tract Number 1826 would bear most of this tax and that the purpose of the tax was to get back from this tract the money which the district had agreed to refund to the subdividers under their contract with them.

█ The trial court had the power to determine whether the connection charge was unreasonable and unfair, but the matter of fixing water rates is legislative in character and the court was limited to a finding that the rate fixed was unfair. (*Durant* v. *City of Beverly Hills, supra.*) It therefore appears that the court exceeded its jurisdiction in providing in the judgment that:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant, Highland Park Public Utility District and its Board of Directors should be and are hereby enjoined and directed on or before December 1, 1956, to adopt a connection charge consistent with the actual cost to said defendant district of the labor and materials actually expended and reasonably necessary to cause the water to flow from the water mains theretofore installed in the street, into the house to be connected thereto, but excluding from such connection charge all costs of any kind whatsoever to the district for the bringing of the water to the point where it is to flow from the said mains and into the houses connected thereto."

The judgment is modified by striking out this quoted portion thereof. The motion filed herein by respondents to dismiss the appeal is denied.

Judgment affirmed as modified. Respondent to recover costs.

Barnard, P. J., and Griffin, J., concurred.