Filed 12/2/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>COUNTY OF LOS ANGELES,<br><br>     Defendant and Respondent. | B289597<br><br>(Los Angeles County<br>Super. Ct. No. BC684856) |


     APPEAL from a judgment of the Superior Court of Los Angeles County.  Howard L. Halm, Judge.  Reversed in part, affirmed in part on alternative grounds, and remanded with directions.

     Rains Lucia Stern St. Phalle & Silver, Jacob A. Kalinski and Brian P. Ross for Plaintiff and Appellant.

     Miller Barondess, Mira Hashmall and Emily A. Sanchirico for Defendant and Respondent.

                    _____

The Association for Los Angeles Deputy Sheriffs (ALADS) appeals from a judgment following the trial court's ruling sustaining a demurrer to ALADS's complaint without leave to amend. ALADS sued respondent County of Los Angeles (County) concerning the County's alleged breach of a labor agreement. The trial court sustained the County's demurrer on the sole ground that ALADS failed to exhaust the administrative remedies available under the labor agreement before filing suit.

We reverse that ruling. ALADS's complaint alleges that the County failed to comply with compensation provisions described in a November 2015 memorandum of understanding between ALADS and the County (the MOU). Those provisions required the County to match compensation increases given to other County safety employee unions. Thus, the issues that ALADS raises in this action and the relief that it seeks apply to *all* its members.

On the other hand, the grievance procedures under the MOU are only available to individual employees and are not binding on any other parties. Because those procedures would require each of the thousands of individual ALADS members to pursue a grievance through arbitration to obtain the relief that ALADS seeks in this lawsuit, they are not adequate. The inadequacy of available administrative procedures is a well-established exception to the rule that a party must exhaust administrative remedies before seeking judicial relief.

The trial court ruled only on the exhaustion issue. The County raised a number of other grounds in support of its demurrer and argues those grounds again on appeal as alternative grounds to affirm the trial court's ruling. One of those grounds is that ALADS should have first pursued the

claims in its fourth, fifth, and eighth causes of action alleging violations of the Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500 et seq.), in proceedings before the Los Angeles County Employee Relations Commission (ERCOM).[1] We agree. ERCOM has exclusive initial jurisdiction over such claims, and ALADS's argument that ERCOM could not provide binding relief is insufficient to excuse its obligation to first pursue those claims administratively.

With respect to the County's other alternative arguments, we hold that: (1) ALADS's seventh, ninth, and tenth causes of action for declaratory relief no longer address any actual controversy in light of our ruling on the inadequacy of administrative remedies under the MOU, and the trial court's ruling should therefore be affirmed for those causes of action; (2) ALADS should be given leave to amend its third cause of action to add as defendants those County officials necessary to seek writ relief; and (3) ALADS's second cause of action for breach of contract and its eleventh cause of action for alleged breach of the covenant of good faith and fair dealing adequately state claims for relief.

Accordingly, we will reverse the trial court's ruling in part, affirm in part on alternative grounds, and remand for further proceedings on ALADS's complaint. ALADS's first, second, sixth, and eleventh causes of action may proceed; ALADS will be given leave to amend its third cause of action; ALADS's fourth, fifth, and eighth causes of action will be struck without prejudice pending ALADS's exhaustion of administrative remedies

---

[1] Subsequent undesignated statutory references are to the Government Code.

3

concerning those claims with ERCOM; and ALADS's seventh, ninth, and tenth causes of action will be struck because they do not address a current controversy in light of our holdings.

## BACKGROUND

## 1.     The Compensation Provisions of the MOU

ALADS represents nonmanagement deputy sheriffs and peace officers employed in the County District Attorney's office. Management peace officers in those law enforcement agencies are represented by another employee collective bargaining unit, the Los Angeles County Professional Peace Officers Association (PPOA).

ALADS's complaint alleges that the County failed to comply with two compensation provisions in the MOU.[2]  Each of those provisions required the County to match compensation

---

[2] ALADS's complaint quoted these provisions.  In the trial court, the County requested judicial notice of the entire MOU, including two appendices that describe the applicable grievance procedures.  The trial court denied the request on the ground that the requested items were not relevant or appropriate for judicial notice under Evidence Code section 452.  On appeal, ALADS asks that we take judicial notice of the MOU along with all other items that the parties requested be judicially noticed below.  ALADS argues that the MOU was proper for judicial notice under Evidence Code section 452, subdivision (c), as it was adopted by the County Board of Supervisors.  We agree.  The MOU is also clearly relevant, as it sets forth the compensation provisions at issue in this action.  The grievance procedures described in the appendices are also relevant to the question of whether those procedures provide an adequate administrative remedy.  Moreover, the County will not be prejudiced by taking judicial notice of the MOU on appeal, as it requested such notice below.  We therefore take judicial notice of the MOU.

4

increases given to other County employee groups. One such provision (the ATB clause) applied if "any recognized County safety bargaining unit reach[es] a signed agreement that results in a higher across-the-board (ATB) percent increase for any given year" than provided to ALADS members. The other provision (the EE clause) applied if "any recognized County safety bargaining unit reach[es] a signed agreement that results in an economic enhancement" greater than that provided to ALADS's members. An economic enhancement was defined as any "uniform allowance, post pay, standby pay, night shift differential, step increase, vacation time accrual or cash out, holiday pay or cash out, longevity pay, bonus, stipend, incentive pay or lump sum payment."

The MOU was in effect from February 1, 2015, to January 31, 2018. In May 2017, the County Board of Supervisors approved a salary adjustment for sworn management peace officers employed by the sheriff's department and the district attorney's office and represented by PPOA. Pursuant to that adjustment, such employees who have a supervisory certificate from the California Commission on Peace Officers Standards and Training (POST) received an additional 1.5 percent in salary effective July 1, 2017, and an additional 2.0 percent in salary effective July 1, 2018.

ALADS alleges that because "the vast majority (if not all) of the individuals represented by PPOA possess or can readily obtain Supervisory POST Certificates, the provision of additional Supervisory POST pay is the equivalent of an across-the-board increase, triggering the ATB Clause." It also alleges that the POST pay increase was an "economic enhancement" that triggered the EE clause.

5

## 2.    The Grievance Procedure

The MOU contains two appendices describing separate grievance procedures for ALADS's sheriff deputies and district attorney peace officers.  The two grievance procedures contain different definitions of a "grievance."[3]  However, the administrative process involved in the grievance procedures is generally the same for both groups.

The sheriff's department grievance procedure recommends that an employee with a grievance first seek a resolution through informal discussions with a supervisor.  If the grievance is not resolved through such informal discussion, the employee may then pursue formal proceedings.  The first step in such proceedings is consideration of the grievance by a "third level supervisor or middle management representative."  The employee may then seek a hearing with a review board, consisting of the employee's division chief, the area commander "in the employee's chain of command," and up to two additional members of the sheriff's department selected by the employee.  The review board issues a recommendation to the sheriff.  The decision of the sheriff "or his/her designated alternate" is final, subject to a request to pursue arbitration with an appointed arbitrator.

Only grievances "which directly concern or involve the interpretation or application of the specific terms and provisions of [the MOU] and which are brought by an employee who was

---

[3] ALADS argues that the definition of a grievance for sheriff deputies does not include the relief that ALADS seeks in this action.  As discussed below, we do not reach this argument, as we decide for other reasons that ALADS need not pursue administrative remedies under the MOU before prosecuting this lawsuit.

represented by ALADS in any steps of the grievance procedure may be submitted to arbitration." ALADS initiates arbitration by sending a written request to ERCOM.

The results of arbitration are binding on the County "[t]o the extent the decision and award of the arbitrator does not require legislative action by the Board of Supervisors." Arbitration decisions concerning particular designated articles of the MOU are also nonbinding. Such nonbinding decisions include those arising from the "Renegotiation" article in the MOU, which contains both the ATB clause and the EE clause.

Like the grievance procedure for sheriff deputies, the formal procedure governing district attorney peace officers establishes various stages of internal review followed by arbitration. The grievances that are subject to arbitration, the arbitration procedure, and the categories of binding and nonbinding results are the same for district attorney peace officers and for sheriff deputies.

3. **ALADS's Grievances**

ALADS alleges that, in June 2017, "out of an abundance of caution (because ALADS does not concede that the grievance procedures set forth in the ALADS MOU provide adequate administrative remedies)," ALADS initiated two grievances concerning the County's alleged failure to comply with the ATB and EE clauses "on behalf of all of its members." One grievance concerned sheriff deputies and the other concerned district attorney employees. After proceeding through all the preliminary steps of the grievance process, and after ERCOM had scheduled a hearing on October 23, 2017, concerning ALADS's subsequent request for arbitration, the County allegedly "objected to ALADS' requests for arbitration on the grounds that

7

ALADS could not initiate a grievance on behalf of the individuals it represents."[4]  At the hearing, ERCOM "directed that the grievances as presented be scheduled for arbitration, and advised that the arbitrator could rule on the County's objections."

According to a verified complaint that ALADS filed in another action concerning the ATB and EE clauses (which we have judicially noticed at the County's request), the arbitrator handling the grievances subsequently took the scheduled arbitrations off calendar as a result of the County's refusal to comply with a discovery order.

### 4.  ALADS's Complaint

ALADS filed its complaint in this action on November 22, 2017.  The complaint alleges 11 causes of action, which include: (1) claims for breach of contract and for declaratory relief concerning the County's alleged violation of the ATB and EE clauses in the MOU; (2) a request for a writ of mandate requiring the County to comply with those clauses; (3) requests for declaratory relief concerning the County's alleged obligation to permit representative grievances; and (4) claims alleging that the County violated the MMBA by failing to notify ALADS of the pay increases to employees represented by PPOA and by refusing to meet and confer with ALADS concerning the effect of those pay increases on the ATB and EE clauses in the MOU.

The County filed a demurrer raising a number of grounds, including the claim that ALADS had failed to exhaust its

---

[4] As discussed below, the County claims this objection did not concern ALADS's right to represent its members in the grievance process, but rather to its right to bring a *representative* grievance that purported to be on behalf of all of its members (i.e., a class grievance).

8

administrative remedies under the MOU.  The trial court sustained the demurrer on that ground without leave to amend. The court rejected ALADS's argument that the administrative procedure available under the MOU is inadequate because it does not permit class grievances.  The court concluded that the argument was not relevant because ALADS's complaint did not allege class claims.

## DISCUSSION

### 1.    Standard of Review

We review an order sustaining a demurrer de novo.  (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.)  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

We review the trial court's decision denying leave to amend for abuse of discretion.  In determining if the trial court has abused its discretion, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank, supra,* 39 Cal.3d at p. 318.)

### 2.    The Trial Court's Ruling that ALADS Is Required to Exhaust Administrative Remedies Under the MOU

The failure to arbitrate in accordance with the grievance procedures in a collective bargaining agreement is "analogous to the failure to exhaust administrative remedies." (*Service Employees Internat. Union, Local 1000 v. Department of Personnel Admin.* (2006) 142 Cal.App.4th 866, 870 (*Service Employees*).)  "In general, a party must exhaust administrative

9

remedies before resorting to the courts." (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080 (*Coachella Valley*).) This exhaustion doctrine " 'is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Ibid.*, quoting *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391.) In addition, even if an administrative proceeding does not eliminate the need for a subsequent judicial action, it "will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476.)

However, the exhaustion doctrine is subject to exceptions. In particular, the doctrine does not apply when the available administrative remedy is inadequate or when it is clear that pursuing that remedy would be futile. (*City of San Jose v. Operating Engineers Local Union No. 3* (2010) 49 Cal.4th 597, 609 (*City of San Jose*); *Coachella Valley, supra,* 35 Cal.4th at pp. 1080–1081.)

ALADS argues that those exceptions apply here. However, it also argues that we need not consider the exceptions because the exhaustion doctrine does not apply at all. ALADS claims that because ALADS *itself* has the right to enforce the MOU in court, it is not obligated to pursue the administrative remedies that are available to its members. Thus, before determining whether any exceptions to the exhaustion doctrine apply, we first consider ALADS's argument that the doctrine does not apply to its claims.

### A. *ALADS is not exempt from the exhaustion requirement merely because it filed this action in its own name*

ALADS argues that it was not required to exhaust any administrative remedies under the MOU because those remedies apply only to its members and it has filed this lawsuit as an entity. ALADS bases its argument primarily on our Supreme Court's decision in *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328 (*City of Glendale*).

In *City of Glendale*, the court held that a memorandum of understanding between a public union and a public employer under the MMBA is binding. (*City of Glendale, supra,* 15 Cal.3d at pp. 337–338.) In reaching that decision, the court also decided that the plaintiff union could sue the city to enforce the agreement on behalf of its members without pursuing a class action. The court explained that the plaintiff association, "as the recognized representative of city employees, may sue in its own name to enforce the memorandum of understanding." (*Id.* at p. 341.)

The court in *City of Glendale* also rejected the argument that the action was barred by the plaintiff's failure to exhaust administrative remedies. (*City of Glendale, supra,* 15 Cal.3d at pp. 342–343.) However, the court did not do so because the union had sued in its own name or because it had no right as an entity to pursue an administrative remedy. Rather, the court held that the available administrative procedure was inadequate. The court explained that "the city's procedure is tailored for the settlement of minor *individual* grievances. A procedure which provides merely for the submission of a grievance form, without the taking of testimony, the submission of legal briefs, or

11

resolution by an impartial finder of fact is manifestly inadequate to handle disputes of the crucial and complex nature of the instant case, which turns on the effect of the underlying memorandum of understanding itself." (*Ibid.*)

Thus, the court in *City of Glendale* simply applied the recognized exception to the exhaustion requirement for administrative proceedings that are inadequate. (*City of Glendale, supra,* 15 Cal.3d at p. 342.) It held that a nonadversary grievance process was not an adequate procedure to consider broad issues concerning interpretation of the relevant labor agreement. It did not hold that the plaintiff union had the right to bypass the administrative process entirely simply because it had standing to sue in its own name to enforce a labor agreement on behalf of the employees that it represented.

ALADS also cites *Professional Firefighters Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276 and *Daniels v. Sanitarium Assn. Inc.* (1963) 59 Cal.2d 602 for the general proposition that a union itself has standing to sue. But the County does not dispute that ALADS has standing to pursue this lawsuit. Rather, it argues that before pursing remedies on behalf of its members in court, it must first do so through the administrative procedures specified in the MOU.

We agree that absent an exception to the exhaustion requirement, ALADS is not exempt from pursuing administrative remedies on behalf of its members simply because it is the named plaintiff in this lawsuit. It is clearly able to pursue such administrative remedies. The County concedes that ALADS "can

12

represent its members in pursuing grievances" and points out that ALADS is doing so in the pending arbitration.[5]

ALADS does not assert any claims in this action based on any unique injury to it as an entity; it seeks only various forms of relief on behalf of its members. As ALADS's counsel acknowledged below, "this is a representative case." The relief that ALADS requests is ultimately all directed toward an interpretation of the MOU that would grant its members additional compensation under the ATB and EE clauses in the MOU. None of the authority that ALADS cites supports its argument that it is exempt from the need to exhaust administrative remedies on behalf of its members before seeking relief on their behalf in this lawsuit merely because it filed the lawsuit under its own name. We therefore reject the argument that the exhaustion requirement does not apply at all to ALADS.

Although ALADS is not exempt from the exhaustion requirement, as discussed below we also agree that the inadequacy exception applies here.

B. *Individual remedies under the MOU are inadequate here*

ALADS argues that because classwide relief is not available through the MOU's grievance process, to obtain the benefits it claims are due to its entire membership it would need

---

[5] Indeed, the grievance procedure set forth in the MOU provides that only grievances that "are brought by an employee who was represented by ALADS in all steps of the grievance procedure may be submitted to arbitration hereunder." The County claims it has opposed only ALADS's efforts to prosecute a grievance seeking classwide relief.

13

to prosecute separate individual grievance actions on behalf of each of its 7,800 members.  We agree that such an onerous and time-consuming process precludes adequate relief.

It is undisputed that classwide relief is not available under the administrative procedures set out in the MOU.[6]  Nor does the County dispute ALADS's claim that, although the same contract interpretation issue would arise in each individual grievance, a decision on that issue in one member's proceeding would not have any binding effect on other members' claims.

In *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494 (*Tarkington*) the court summarized

---

[6] As mentioned, ALADS attempted to pursue representative grievances on behalf of all of its members, but, at least as far as the appellate record shows, ALADS's effort was unsuccessful.  As discussed further below, ALADS also asserted alternative causes of action in its complaint in this case seeking a declaration that it is entitled to pursue representative grievances on behalf of its members.  It argues on appeal that such grievances are permitted under principles of waiver and estoppel.  However, regardless of the merits of those causes of action, they do not mean that adequate administrative relief is available.  Even if ALADS were ultimately successful in obtaining a judicial order requiring a class grievance, that result would not provide adequate relief.  Such an order would simply mean that, before even obtaining the right to pursue meaningful administrative remedies, ALADS would have been compelled to obtain judicial relief.  Requiring a judicial action before pursuing administrative relief as a prelude to a second judicial proceeding does not conserve judicial resources and does not provide a timely remedy. (See *City of San Jose, supra,* 49 Cal.4th at p. 609 [administrative relief is inadequate "when the administrative procedure is too slow to be effective"].)

the law on exhaustion of administrative remedies when a judicial action seeks relief on behalf of a class. The court explained that, if the available administrative remedies "do provide classwide relief, than [*sic*] at least one plaintiff must exhaust them before litigation may proceed. If the remedies do not provide classwide relief, then no plaintiff need exhaust them before suing." (*Id.* at p. 1510.)

For this analysis the court in *Tarkington* relied on *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926 (*Rose*) and *Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307 (*Lopez*). In *Rose,* retired police officers and fire fighters petitioned on behalf of a putative class for a writ of mandate requiring the state pension system to include certain fringe benefits in the compensation portion of their retirement benefit formula. The available administrative hearing procedure did not provide for class relief. The appellate court held that the available administrative remedies were inadequate, explaining that "plaintiffs in a class action need not exhaust their administrative remedies prior to instituting judicial proceedings where the administrative remedies available to the plaintiffs do not provide for class relief." (*Rose*, at p. 935, citing *Ramos v. County of Madera* (1971) 4 Cal.3d 685, 690–691 (*Ramos*).)

In *Ramos,* our Supreme Court held that individual administrative hearings were an inadequate remedy for a class of families who were allegedly threatened with termination of their public benefits. (*Ramos*, *supra,* 4 Cal.3d at pp. 690–691.) The court concluded that there was "no failure to exhaust an administrative remedy for class relief, for no such administrative remedy existed." (*Id.* at p. 691.)

15

*Lopez, supra,* 232 Cal.App.3d 307, involved class claims by a San Francisco city meter reader alleging that salary data for comparable positions in other organizations were not properly included in his salary computations.  The named plaintiff had failed to file an appeal of the issue with the San Francisco Civil Service Commission.  The court held that the judicial action was barred by the exhaustion doctrine, rejecting the proposition that "class actions are per se exempt from the exhaustion requirement." (*Id.* at p. 313.)  The court concluded that *Rose* did not adopt such a rule, but simply "relied on the settled maxim that exhaustion does not apply where the administrative remedy provided is either unavailable or inadequate to afford the relief sought." (*Lopez*, at pp. 312–313.)  However, in contrast to the situation in *Rose,* in *Lopez* administrative relief applicable to the entire class was available:  "the Commission regularly hears appeals from individual employees on matters which affect the entire class to which they belong." (*Lopez*, at p. 313.)

These cases are all consistent with the court's conclusion in *Tarkington* that, when a judicial action seeks relief on behalf of a class, and the available administrative procedures do not provide classwide relief, "then no plaintiff need exhaust them before suing." (*Tarkington, supra,* 172 Cal.App.4th at p. 1510.)  That conclusion applies here.[7]

_____

[7] The holding in *Tarkington* is also consistent with this conclusion.  In that case, a putative class of grocery store workers sought an order directing that they be paid unemployment benefits following a lock-out during a labor dispute. (*Tarkington, supra,* 172 Cal.App.4th at pp. 1498–1500.)  Some members of the class (Tarkington and Straub) had already pursued

16

The County cites *Morton v. Superior Court* (1970) 9 Cal.App.3d 977, but that case simply rejected the claim that a party may bypass an available administrative procedure merely because he or she has filed a class action. The court concluded that the exhaustion requirement barred that action because the plaintiff police officers "failed to demonstrate that the city grievance procedure was inadequate to protect the members of the class they allegedly represent." (*Id.* at pp. 983–984.) The court explained that if the plaintiffs had prevailed in the administrative process, "the ruling would have applied to all police officers similarly affected," and, if the decision was adverse, "it would have had the finality necessary to enable them to bring a class action." (*Id.* at p. 984.) Thus, the holding in *Morton* simply shows that an administrative process may be adequate where it permits relief applicable to the class. That is absent here.

The County also relies on the fact that this is not a class action. However, it is a representative action. Like the named plaintiff in a class action, ALADS seeks relief on behalf of a

---

unemployment benefits through the administrative process, including to the California Unemployment Insurance Appeals Board (the Board) "on behalf of themselves and all persons similarly situated." (*Id.* at p. 1499.) The appellate court concluded that, by "giving the Board the opportunity to consider the situation, use its expertise, decide this issue, and render litigation unnecessary, Tarkington and Straub fulfilled all the purposes of the exhaustion doctrine." (*Id.* at p. 1509.) Here, there is no single board that would decide the compensation issues that ALADS raises on behalf of all members; rather, individual grievances would be decided by arbitrators selected by the individual parties.

17

designated group of persons (i.e., its members). The form of the action is therefore not material. (Cf. *City of Glendale, supra,* 15 Cal.3d at p. 341 [the plaintiff's class allegations were "superfluous," because the plaintiff association, "as the recognized representative of city employees, may sue in its own name to enforce the memorandum of understanding"].) The material issue is whether the relief available through the administrative process would apply to the class of employees that ALADS represents. It is undisputed that it would not.

The County also argues that ALADS bargained for the administrative procedure that it now seeks to avoid. But the County does not cite any support in the record for the conclusion that ALADS agreed that it would be required to exhaust the bargained-for grievance procedure on behalf of each of its many members before asserting the type of classwide claims that it brings here. We cannot reasonably assume that ALADS agreed to pursue thousands of individual grievances before seeking a judicial ruling that the County has breached its agreement to provide additional compensation to all its members.[8]

_____

[8] That conclusion is also supported by the nonbinding nature of the arbitrations at issue. As mentioned, arbitrations concerning disputes arising from the section of the MOU at issue here are "entirely advisory in nature and shall not be binding upon any of the parties." It seems unlikely that ALADS would agree that it would be required to pursue thousands of such "entirely advisory" arbitrations on behalf of each of its members before seeking judicial relief that would be binding upon the County. Our holding that ALADS is not excused from pursuing administrative relief on behalf of its members simply by filing a lawsuit in its own name does not mean that ALADS *agreed* to

18

Nor has the County provided any legal authority that the exception to the exhaustion requirement for inadequate remedies can never apply to negotiated grievance procedures. *Service Employees*, *supra*, 142 Cal.App.4th 866, which the County cites, suggests the opposite. In that case, the court enforced an arbitration procedure in a collective bargaining agreement between a union and the state in a dispute over the distribution of political literature. However, it did so only after concluding that the exception for inadequate remedies did not apply. The court noted that "the union has not presented that rare set of circumstances compelling us to excuse its failure to exhaust its negotiated remedies because, as it asserts, it will suffer irreparable injury, arbitration is inadequate, or judicial delay will result in a multiplicity of actions." (*Service Employees,* at p. 873.) The court rejected the union's argument that enforcing the arbitration provision would lead to a "multiplicity of actions" because the "state concedes it will be bound by the interpretation of the arbitrator and therefore will apply the interpretation consistently and even handedly to future communications." (*Id.* at pp. 874–875.) Here, of course, the County has not agreed that it would be bound by the results of any arbitration.

During oral argument, the County cited *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2015) 234 Cal.App.4th 459 (*ALADS v. COLA*) in support of its claim that the bargained-for grievance procedures in the MOU are adequate despite the absence of a classwide remedy. That case is not controlling here. In *ALADS v. COLA,* the County appealed the

pursue such relief where, as here, the grievance process would be manifestly inadequate to resolve the dispute at issue.

19

trial court's order staying potential arbitration under labor agreements with various employee unions pending adjudication of a cross-complaint that the unions had filed.  The appellate court held only that the trial court erred in staying arbitration under Code of Civil Procedure section 1281.2 because the "Unions' claims in the grievances and the cross-complaint were the same—i.e., the cross-complaint raised no other nonarbitrable issues between the parties." (*ALADS v. COLA*, at pp. 468–469.) The court expressly did not consider the unions' argument that the unavailability of class arbitration excused them from participating in arbitrations.  (*Id.* at pp. 466–467.)

The County also suggested during oral argument that *individual* ALADS members would be free to pursue judicial relief once they exhausted their own administrative remedies. But that possibility does not provide an answer to the inadequacy of individual administrative remedies here.  Without the County's agreement to accept the result of any individual arbitration as binding on others, there could be no classwide resolution at the administrative level.  *Ramos, Rose*, and *Tarkington* establish that administrative relief is not adequate in a class or representative action if it does not apply to the class.[9]

---

[9] The practical problems associated with judicial review of individual grievances in this case illustrates why the availability of such individual judicial review does not affect this principle. Assuming (without deciding) that ALADS's interpretation of the MOU is correct, individual ALADS members ought to be successful in their arbitrations.  In that event, the County could simply choose to pay individual successful claims, avoiding judicial review altogether or at least creating potential standing

3. **The County's Alternative Arguments In Support of Its Demurrer**

An order sustaining a demurrer without leave to amend may be affirmed on any ground stated in the demurrer, even if the trial court did not act on that ground. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) The County raised a number of grounds in support of its demurrer that the trial court did not need to reach because of its ruling on the exhaustion issue. The County raises several of those arguments on appeal as

---

problems should a successful member attempt to pursue a judicial action. Because the results of the arbitrations are not binding, each member would need to pursue his or her own arbitration no matter how many individual claims the County previously lost and paid. Perhaps an arbitrator would issue an adverse ruling and an individual member could then seek a judicial remedy. However, even if successful, such a remedy would only resolve the individual claim, requiring the successful assertion of collateral estoppel, stare decisis, or some other judicial mechamism to apply the result more broadly. Or perhaps ALADS (or a member) might attempt again to pursue a class or representative judicial action following one or more arbitrations. The County has not agreed that the results of any one arbitration would suffice to exhaust the administrative remedies available to other members. Thus, the County might again raise exhaustion of administrative remedies as a defense to such a class or representative action. In that event, the procedural posture of such an action would be no different than it is now, except for the expenditure of a great deal of time and effort to obtain a nonbinding ruling by an arbitrator (or arbitrators) in an individual case (or cases) concerning a global issue of contract interpretation.

alternative grounds to support the trial court's ruling. We address those arguments below.

### A. *ALADS is required to exhaust its administrative remedies for alleged violations of the MMBA*

ALADS's fourth, fifth, and eighth causes of action allege that the County violated the MMBA by: (1) failing to notify and meet and confer with ALADS concerning the compensation increase it provided to management employees represented by PPOA, and (2) objecting to ALADS's initiation of a representative grievance. The County argues that ALADS is required to present these claims in the first instance to ERCOM. We agree.

The MMBA governs collective bargaining for local government employees. (§ 3500 et seq.) Among other things, the MMBA imposes a duty on local public agencies to provide notice to recognized employee organizations of relevant proposed enactments and to meet and confer with employee organizations concerning such proposals as well as concerning the terms and conditions of employment. (§§ 3504.5, subd. (a), 3505; *Coachella Valley, supra,* 35 Cal.4th at p. 1083.)

Except in Los Angeles County, the MMBA is administered by the Public Employment Relations Board (PERB). The PERB is a "quasi-judicial administrative agency" modeled after the National Labor Relations Board. (§ 3540; *County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 916 (*County of Los Angeles*).) The equivalent of the PERB in Los Angeles County is ERCOM, which is statutorily empowered to take actions on unfair practices and to issue "determinations and orders" as ERCOM deems necessary, "consistent with and pursuant to, the policies of this chapter [§§ 3500–3511]." (§ 3509,

22

subd. (d).)  Thus, ERCOM is "a separate agency empowered to resolve public employment labor disputes in Los Angeles County just as PERB does for all other counties in California." (*County of Los Angeles*, at p. 916.)

A complaint alleging a violation of sections 3500 to 3511 is an unfair practice charge.  The PERB has exclusive jurisdiction to make an initial determination as to whether such charges are justified and, if so, the appropriate remedy.  (§ 3509, subd. (b); *County of Los Angeles, supra,* 56 Cal.4th at p. 916 [PERB has "exclusive initial jurisdiction over complaints alleging unfair labor practices violating the MMBA"].)

ALADS does not dispute that ERCOM exercises the same initial exclusive jurisdiction over alleged violations of the MMBA within Los Angeles County.  Rather, ALADS relies on the principle that exhaustion of administrative remedies may be excused when an agency lacks authority or jurisdiction to resolve the relevant dispute.  ALADS claims that ERCOM does not have jurisdiction to "interpret the meaning" of the MOU, which is exclusively a judicial function.

ALADS cites no authority for this claim.  In any event, ALADS's fourth, fifth, and eighth causes of action do not seek an interpretation of the MOU.  ALADS's fourth and fifth causes of action allege that the County violated the MMBA by failing to meet and confer.  That allegation directly implicates ERCOM's function to adjudicate unfair practices.  (See *San Diego Municipal Employees Assn. v. Superior Court* (2012) 206 Cal.App.4th 1447, 1457 ["Whether an employer's refusal to satisfy its alleged meet and confer obligations is an unfair labor practice under the MMBA is therefore a claim falling within PERB's exclusive initial jurisdiction"].)  ALADS's eighth cause of action does not mention

the MOU at all, but simply alleges that the County violated section 3503 by objecting to ALADS's initiation of a grievance on behalf of its members.[10]

ALADS also argues that it is excused from pursuing a remedy with ERCOM because ERCOM does not have the authority to issue an order that is binding on the County. Citing a Los Angeles County employee relations ordinance, ALADS argues that ERCOM may not issue binding orders that would require action by the board of supervisors to "make appropriations, adjustments, transfers or revisions." (L.A. County Code, § 5.04.240E1.) The argument is unpersuasive for several reasons.

First, ALADS does not show that the order it seeks would be nonbinding. In the relevant causes of action, ALADS does not request an award of money that would require appropriations or authorization by the County Board of Supervisors. Rather, ALADS seeks an order requiring the County to meet and confer and an order permitting ALADS to pursue a representative grievance.

Second, the ordinance that ALADS cites clearly expects an employee organization to pursue a remedy through ERCOM before seeking a judicial remedy even if ultimate relief would require further action by the board of supervisors. It provides that, "[i]f the commission's decision and order requires action by the board of supervisors . . . the chief administrative officer shall

---

[10] As discussed above, the County does not dispute that ALADS has the right to represent its individual members in pursuing grievances. This cause of action apparently concerns ALADS's ability to pursue a grievance on behalf of a class.

24

submit the appropriate documents and materials to the board of supervisors to enable it to take such action.  If the board of supervisors does not take actions within such reasonable time as the commission may specify, the commission shall so notify the other parties.  An aggrieved party may then seek judicial relief from the Superior Court." (L.A. County Code, § 5.04.240E2.)[11]

Third, and most important, ALADS does not cite any authority supporting its argument that it need not pursue a nonbinding remedy through ERCOM.  ALADS cites *Coachella Valley*, but that case is inapplicable.  In *Coachella Valley,* our Supreme Court stated the general rule that exhaustion of administrative remedies "may be excused when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.'" (*Coachella Valley, supra,* 35 Cal.4th at pp. 1081–1082.)  In that case, the court decided that exhaustion of remedies before the PERB was excused where the alleged expiration of a statute of limitations "deprive[d] the PERB of authority to issue a complaint." (*Id.* at p. 1082.)

Such a deprivation of authority is different from the *limited* authority to issue only a nonbinding remedy.  (See *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1319 ["*Coachella Valley* does not stand for the proposition that PERB is necessarily divested of its initial jurisdiction if it is unable to order a certain remedy"].)  Other cases hold that exhaustion of administrative remedies is required even if the

_____

[11] We take judicial notice of this ordinance pursuant to Evidence Code section 452, subdivision (b) and section 459, subdivision (a).

25

available remedies are limited or nonbinding. (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 323 ["courts have found the rule inapplicable only when the agency lacks authority to hear the complaint, not when the administrative procedures arguably limit the remedy the agency may award"]; *Bockover v. Perko* (1994) 28 Cal.App.4th 479, 487 [advisory nature of a hearing body's decision did not make a grievance procedure inadequate].)

We therefore conclude that if ALADS elects to pursue its fourth, fifth, and eighth causes of action, it must first pursue those claims with ERCOM.

**B.** ***ALADS's claims for declaratory relief in its seventh, ninth, and tenth causes of action are moot***

ALADS's tenth cause of action seeks a declaration that "the issue of the County's failure to comply with the ATB Clause and the EE Clause is not within the definition of a grievance as set forth in Appendix B of the ALADS MOU [applicable to sheriff deputies], and therefore, ALADS is not required to exhaust administrative remedies on behalf of those individuals represented by ALADS who are employed by the County Sheriff's Department." We hold above for other reasons that ALADS is not required to pursue the grievance procedure in the MOU for its claims concerning the County's alleged violation of the ATB and EE clauses. ALADS's tenth cause of action is therefore moot. Stated differently, there is no actual controversy for the court to resolve. (Code Civ. Proc., § 1060; *Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 836.)

ALADS's seventh and ninth causes of action are similarly moot. Those causes of actions seek a declaration that ALADS is

entitled to pursue class grievances on behalf of its members. ALADS alleges that it filed such grievances "out of an abundance of caution (because ALADS does not concede that the grievance procedures set forth in the ALADS MOU provide adequate administrative remedies)."[12]  As discussed above, we agree with ALADS's argument that the individual grievance procedures in the MOU do not provide adequate administrative remedies here. ALADS therefore has no need to pursue an administrative remedy under the MOU.  Thus, there is no actual and current controversy concerning its seventh and ninth causes of action.

The County does not address ALADS's sixth cause of action, which seeks a declaration concerning the proper interpretation of the ATB and EE clauses.  That interpretation goes to the heart of ALADS's claims against the County. ALADS's sixth cause of action may therefore proceed along with ALADS's claims seeking damages and other relief based upon the County's alleged incorrect interpretation of the ATB clause and the EE clause.[13]

---

[12] During oral argument in the trial court, ALADS's counsel similarly explained that it filed its seventh cause of action "in the alternative" to other causes of action that it alleged in its complaint.  During oral argument in this court, ALADS's counsel similarly agreed that ALADS's claims for declaratory relief concerning its administrative remedies would be moot in the event that we hold (as we do) that the administrative relief available under the MOU is inadequate.

[13] We do not express any opinion about the proper interpretation of those clauses or about the ultimate merits of ALADS's claims.

27

### C. *ALADS may amend its third cause of action to join parties necessary to seek a writ of mandate*

The County argues that ALADS failed to allege facts necessary for a writ of mandate with respect to ALADS's third, fourth, fifth, and eighth causes of action. Because we hold above that ALADS is required to pursue its administrative remedies with ERCOM before seeking judicial relief concerning its fourth, fifth, and eighth causes of action, we need only consider the County's arguments with respect to ALADS's third cause of action.

That cause of action seeks a writ of mandate directing the respondents (i.e., the County and unnamed Doe parties) to "act in compliance with their ministerial duty under the ALADS MOU by providing individuals represented by ALADS with equivalent economic enhancements to those provided to individuals represented by PPOA." The County argues that, with this claim, ALADS really seeks to force the County to exercise its discretion to award economic benefits. It claims that ALADS's third cause of action is therefore a "blatant attempt to turn ALADS' contract claims into a petition for writ of mandate."

Our Supreme Court rejected a similar argument in *City of Glendale.* The court in that case first observed that "[t]he usual remedy for failure of an employer to pay wages owing to an employee is an action for breach of contract; if that remedy is adequate, mandate will not lie." (*City of Glendale, supra,* 15 Cal.3d at p. 343.) But the court also noted that the payment of a public employee's wages often requires preliminary steps by public officials, and that, in such instances, "the action in contract is inadequate and mandate is the appropriate remedy."

28

(*Ibid.*)  Because the plaintiff in that case had failed to join as defendants "the city officials entrusted with the administrative duties of computing and paying salaries," the court remanded the case to permit joinder of the appropriate city officials.  (*Id.* at p. 345.)  The court directed that those officials, once joined, should not be permitted to raise any defense of laches or limitations.  (*Id.* at pp. 345–346.)

The court in *City of Glendale* also rejected the argument that the adoption of a salary ordinance is a discretionary legislative decision and is therefore not a ministerial act that may be compelled through a writ of mandate.  (*City of Glendale, supra,* 15 Cal.3d at pp. 343–344.)  The court approved the trial court's analysis that the city's prior adoption of the memorandum of understanding at issue "in itself constituted the legislative act that fixed employee salaries in accord with that understanding." The writ therefore simply "directed the non-legislative and ministerial acts of computing and paying the salaries as fixed by the memorandum and judgment."  (*Id.* at p. 344.)

The analysis in *City of Glendale* controls here.  ALADS seeks an order compelling the County to comply with the agreement it allegedly already made and approved in the MOU. As the court explained in *City of Glendale,* such an order would not require a new legislative act, but would simply compel compliance with an act that has already occurred.  (*City of Glendale, supra,* 15 Cal.3d at p. 344.)

However, as in *City of Glendale,* in this case ALADS did not name as defendants the appropriate County officials responsible for computation and payment of the benefits it claims its members are due based on the MOU.  We therefore will remand with directions that ALADS be given leave to amend to name

29

those officials. Because the entity that is the real party in interest (i.e., the County) has already been named and represented in this action, any newly added County officials will not be permitted to assert any laches or limitations defenses. (See *City of Glendale, supra,* 15 Cal.3d at pp. 345–346.)[14]

###### D. *ALADS's second cause of action for breach of contract states a claim*

ALADS's second cause of action alleges that the County "unilaterally repudiated" the MOU by "failing to adhere to the terms of the ATB Clause and EE Clause." The County argues that ALADS has not sufficiently alleged facts showing a breach of contract.

" 'An anticipatory breach of contract occurs on the part of one of the parties to the instrument when he positively repudiates the contract by acts or statements indicating that he will not or cannot substantially perform essential terms thereof.' " (*Guerrieri v. Severini* (1958) 51 Cal.2d 12, 18, quoting *Crane v. East Side Canal etc. Co.* (1935) 6 Cal.App.2d 361, 367; see *Jeppi v. Brockman Holding Co.* (1949) 34 Cal.2d 11, 18.) ALADS alleges that the "County has refused to apply either the ATB Clause or the EE Clause to the PPOA Adjustments." The allegation is sufficient to state a breach of contract claim under a repudiation theory.

---

[14] The County also argues that ALADS failed to allege that it has no "plain, speedy, and adequate" remedy other than a writ, because adequate administrative remedies are available. Because we reject the adequacy of the administrative remedies available under the MOU, we need not consider this argument further.

30

### E. *ALADS's eleventh cause of action for breach of the covenant of good faith and fair dealing asserts a claim*

ALADS's eleventh cause of action alleges that the ATB and EE clauses included an implied obligation by the County to notify ALADS of "across-the-board salary increases or economic enhancements" given to other County bargaining groups. The County argues that this cause of action fails to state a claim because such an obligation would constitute a *new* contractual obligation that may not be implied.

The covenant of good faith and fair dealing is implied by law in every contract and exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349–350.) The scope of the covenant depends upon the underlying contract: The covenant "cannot ' "be endowed with an existence independent of its contractual underpinnings." ' " (*Ibid.*, quoting *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36.)

Here, the parties have different interpretations of the underlying relevant contractual provisions. Moreover, once the MOU is interpreted, the scope of the implied covenant may still depend upon factual issues concerning the parties' expectations. For example, ALADS argues that the County had an implied obligation to notify it of compensation increases to other employee groups because otherwise "ALADS would have no ability to enforce its contract." That argument of course depends upon a conclusion that ALADS's interpretation of the contract is correct. However, it also may depend upon factual issues—such as ALADS's access to the County's compensation decisions and

31

the parties' course of dealing—that cannot be resolved on demurrer.

Because the relevant provisions of the MOU remain to be interpreted, it is premature to determine the scope of the implied covenant. (See *Moore v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 280, 300 ["The breach of the implied covenant cause of action can be resolved only after a trier of fact resolves the contract interpretation issue"].) We therefore reject the County's argument that ALADS's eleventh cause of action fails to state a claim as a matter of law, and we leave to the trial court to determine the scope of the implied covenant in connection with its interpretation of the MOU itself.

## DISPOSITION

The judgment is reversed. The trial court's ruling that ALADS must exhaust its administrative remedies under the MOU before pursuing this action is also reversed. The trial court's ruling sustaining the County's demurrer without leave to amend is affirmed on alternative grounds with respect to ALADS's fourth, fifth, seventh, eighth, ninth, and tenth causes of action. The trial court's ruling sustaining the County's demurrer

to ALADS's third cause of action is affirmed on alternative grounds with leave to amend as stated below.

On remand, the trial court shall:  (1) strike ALADS's fourth, fifth, and eighth causes of action without prejudice, pending ALADS's exhaustion of administrative remedies concerning those claims with ERCOM; (2) strike ALADS's seventh, ninth, and tenth causes of action for declaratory relief; (3) strike ALADS's third cause of action, with leave to amend to name as defendants the County officials necessary for that claim; and (4) permit ALADS's first, second, sixth, and eleventh causes of action to proceed.  The parties shall bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.


33